IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-1566-MSK-CBS

CALIFORNIA DHI, INC.,

      Plaintiff,

v.

UDO ERASMUS, an individual, a/k/a PR International, Inc.,

      Defendant.

---

## OPINION AND ORDER DENYING MOTION TO DISMISS AND MOTION FOR SANCTIONS

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion to Dismiss Counterclaims and Strike Portions of the Defendant's Answer[1] **(# 38)**, the Defendant's response **(# 47)**, and the Plaintiff's reply **(# 52)**; and the Plaintiff's Motion for Sanctions **(# 50)**, the Defendant's response **(# 55)**, and the Plaintiff's reply **(# 57)**.

According to the Complaint, in 1994, a closely-held corporation named "Designing Health, Inc." was formed in Colorado. The Defendant, one of three shareholders in the corporation, came to hold 33% of the stock. In 1998, the corporation commenced litigation against the Defendant in the United States District Court for the Central District of California,

---

[1]The Plaintiff has also filed several "Motion[s] for Order to Take Judicial Notice" **(# 41, 48, 54)**, apparently for the purpose of submitting various exhibits in support of the substantive motions. Submission of exhibits in this unorthodox manner needlessly complicates the Court's docket. All future motions shall attach the supporting evidence as exhibits to the motion itself. These motions requesting "judicial notice" will be denied.

1

alleging claims of fraud, breach of fiduciary duty, and unfair competition, among others.  In 2003,

following a jury trial, the District Court in California entered a judgment in favor of the

corporation and against the Defendant for more than $ 1.7 million.[2]

In late 2003, the corporation was merged into the Plaintiff, an existing California

corporation.  The Defendant dissented from the decision to merge, and invoked his rights under

C.R.S. § 7-113-102 to demand that the corporation purchase his interest in the company at its fair

value.  The corporation retained an appraiser to value the Defendant's stake in the company and

determined it to be approximately $ 370,000.  The Defendant challenged the valuation of his

shares, asserting that their actual value was approximately $ 2.5 million.   The corporation then

commenced this action in Colorado District Court for Garfield County, seeking a declaration from

the Court under C.R.S. § 7-113-301(1) regarding the fair value of the Defendant's stock.  The

Defendant removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C.

§ 1332.

On March 7, 2005, the Defendant filed an Answer **(# 35)**, asserting two counterclaims,

both of which sounded in the exercise of his dissenter's rights under Colorado law.  The Court's

docket also contains a tendered document entitled "Amended Answer," filed on March 23, 2005,

but which was never formally docketed.[3]   The Amended Answer asserts that, under Colorado

---

[2]At the time the Complaint in this case was filed, an appeal of that judgment to the United States Court of Appeals for the Federal Circuit was pending.  On June 1, 2005, the Federal Circuit affirmed the judgment in part, and reversed it in part, vacating approximately half of the damages awarded against the Defendant, but leaving the remainder in place. *Designing Health Inc. v. Erasmus*, 132 Fed.Appx. 826 (Fed. Cir. 2005).

[3]The Court presumes that the Defendant amended his Answer by right pursuant to Fed. R. Civ. P. 15(a), insofar as no responsive pleading had been filed at that time, and directs that the Clerk of the Court docket the Amended Answer and assign it a docket number.

law, a dissenting shareholder is permitted to seek adjudication of claims against the corporation as part of the appraisal proceeding.  Accordingly, the Defendant asserts "counterclaims" that are presented in a somewhat confusing manner, but appear to assert: (i) a contractual agreement as to the payment of royalties to the Defendant, which the Defendant subsequently surrendered in exchange for the company's stock, and that the valuation of the stock "should at least equal the fair value of such royalty"; (ii) waste of unspecified patents and trade secrets; (iii) waste through the pursuit of certain unsuccessful claims against the Defendant in the District Court proceeding in California; (iv) waste of patents[4]; (v) waste of a distributorship agreement regarding the products of a company called Flora, Inc.; (vi) waste of the benefits created by the Defendant's advocacy on behalf of the company; (vii) that the fair market value of his shares is $ 2.5 million; and (viii) a claim of dissenter's rights under Colorado law.

The Plaintiff then filed the instant Motion to Dismiss (**# 38**) the Defendant's counterclaims, other than his counterclaim for dissenter's rights, and to strike certain portions of the Amended Answer.  Shortly thereafter, the Plaintiff also filed a Motion for Sanctions (**# 50**), asserting that the Defendant's counterclaims were asserted for an improper purpose in violation of Fed. R. Civ. P. 11.  Notably, the arguments in support of the Plaintiff's Rule 11 motion are effectively identical in substance (and occasionally lifted verbatim) from the Plaintiff's brief in support of its Motion to Dismiss.

---

[4]This is a very curious claim.  The Defendant asserts that, in the District Court action in California, the Plaintiff "unsuccessfully sued to establish its title to certain United States patents," but that "Plaintiff failed to establish such title to the aforesaid patents." *Amended Answer* at ¶ 96, 97.  It is unclear how a corporation can be accused of wasting patents it was ultimately adjudicated not to own.

Extended analysis of both motions is largely unnecessary, as the parties appear to have jointly labored to conduct a massive edifice out of what is actually a discrete and very limited dispute.[5]  For example, regarding the royalty "issue," although the Defendant devoted several paragraphs to the matter, it is clear that he is not actually asserting a claim for breach of royalty agreement, or otherwise asserting any claim for unpaid royalties.  He expressly concedes that he "exchanged his rights under the [royalty] Agreement for the capital stock."  *Amended Answer* at ¶ 87.  Rather, it appears that the Defendant is simply foreshadowing an argument he intends to present regarding the valuation of the stock - that the value of the stock should at least be equal the value of the consideration, the royalties, he surrendered to receive it.  The Plaintiff appears to be correct that this "preview" of the Defendant's ultimate position does not technically constitute a "counterclaim," because no independent claim for relief is asserted.  *See* Fed. R. Civ. P. 8(a)(3) (claim must state the relief sought by the claimant).  However one would expect that reasonable discussions between counsel would have clarified the nature of this assertion and saved the parties the expense of filing unnecessary pleadings to address it.  Similarly, the various reasons given by the Defendant for why he believes a valuation of $ 2.5 million might be appropriate do not constitute counterclaims.

With regard to the remaining "counterclaims" of waste, once again, the Defendant's assertions of various types of waste are not "counterclaims" because no relief is requested.  Instead, this issue is simply an advance warning by the Defendant that he will argue that  the value

----

[5]In some respect, the dispute appears to be one of semantics and miscommunication exascerbated by lack of objectivity by counsel. Much confusion has resulted from the loquaciousness of the Defendant in stating his "counterclaims" and the rigidity with which the Plaintiff has read them.

of the company includes not only its assets and income streams, but also the value of claims it could assert against its officers for the alleged waste.  As such, the Defendant's counterclaims appear to anticipate what might ultimately be a disputed legal issue: in the context of dissenter's rights under Colorado law, does the determination of the value of the corporation include the value of putative causes of action the corporation may have against its directors and officers for mismanagement?

However, the Court is unable to discern whether the parties actually have a genuine legal dispute on this issue at this time.  The parties briefs both devote considerable time to discussing *Szaloczi v. Behrman Revocable Trust,* 90 P.3d 835, 840 (Colo. 2004),[6] a case which is not precisely on point.  For example, the Defendant relies upon *Szaloczi*'s reference  to "the New York formula," citing in turn to several cases decided under New York State law for the proposition that the value of inchoate claims by the corporation against its officers and directors may be considered by the appraiser.  This reliance on *Szaloczi* would appear to be misplaced, however, as the relevant passage in *Szaloczi* refers to "the New York formula <u>as to exclusivity of the dissenter's remedy</u>."  *Id.* (emphasis added).  The Colorado Supreme Court in *Szaloczi* was considering whether a dissenting shareholder could simultaneously invoke its dissenter's rights <u>and</u> maintain an individual (not derivative, as the Defendant's claims of waste in this case would be) action against the officers of the corporation for breach of fiduciary duty arising out of the transaction that gave rise to the dissent.  *Id.* at 836-37 & n.1.  Nothing in either *Szaloczi* or the New York cases it cites addresses the issue here of whether the fair value determination includes

---

[6]The Plaintiff is advised that it is not necessary to attach copies of published cases to a brief.

5

alleged claims owned by the corporation against its officers.  Similarly, the Plaintiff relies upon *Szaloczi*'s acknowledgment that "appraisal is the exclusive remedy" of a dissenting shareholder, 90 P.3d at 840, failing to recognize that the issue is not whether the Defendant can pursue other claims in addition to invoking his dissenter's rights– which the Court does not construe him to be attempting– but whether alleged claims owned by the corporation against its officers can be assets to be valued by the appraiser. Because it is not clear whether the Plaintiff disputes the Defendant's contention that claims assertable by the corporation against its officers may be valued in an appraisal proceeding, the Court declines to deliver what may be nothing more than an advisory ruling.

Accordingly, the Plaintiff's Motion to Dismiss Counterclaims and Strike is denied, as moot.  The designated "counterclaims" in Defendant's Amended Answer are not formal "counterclaims," but rather, arguments as to "value factors" that the Defendant intends to pursue in an appraisal proceeding.

Turning to the Motion for Sanctions, it is also denied.   The mischaracterization of an Defendant's argument as a "counterclaim" in these circumstances does not warrant the imposition of sanctions under Rule 11.  In accordance with the spirit of  D.C. Colo. L. Civ. R 7.1(A), the Court strongly encourages counsel for the parties to redouble their efforts to communicate, with an eye towards clearly explaining their positions and fully understanding their adversary's position before seeking judicial review.

For the foregoing reasons, the Plaintiff's Motion to Dismiss Counterclaims and Strike **(# 38)** is **DENIED**, as moot..  The Plaintiff's Motion for Sanctions **(# 50)** is **DENIED**.   The Plaintiff's Motions for Judicial Notice **(# 41, 48, 54)** are also **DENIED AS MOOT.**  The Clerk of

the Court shall assign a docket number to the Defendant's Amended Answer, tendered on March

23, 2005.

    Dated this 13th day of January, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge