IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-1566-MSK-CBS

CALIFORNIA DHI, INC.,

    Plaintiff,

v.

UDO ERASMUS, an individual, a/k/a PR International, Inc.,

    Defendant.

_____

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION AND SETTING PREJUDGMENT INTEREST RATE**
_____

    **THIS MATTER** comes before the Court pursuant to the parties' briefs **(# 176, 177)** with regard to the appropriate prejudgment interest rate to be applied; and the Plaintiff's Motion for Reconsideration **(# 179)**, the Defendant's response **(# 180)**, and the Plaintiff's reply **(# 181)**.

    The Court will not recite the underlying evidence in any detail. The Court's oral findings of fact and conclusions of law of February 15, 2008 **(# 173)** are deemed incorporated herein, and familiarity with those findings and conclusions are assumed.

    In summary, the Plaintiff commenced this action pursuant to C.R.S. § 7-113-101 *et seq.*, Colorado's Dissenter's Rights statute. In general, that statute permits a shareholder in a closely-held corporation who dissents from certain corporate actions to compel the corporation to buy out the dissenter's shares for their "fair value" of the shares as of "the effective date of the corporate action to which the dissenter objects." C.R.S. § 7-113-101(4). In this action, the

1

Defendant dissented from a plan of merger approved by the Plaintiff corporation in 2003, and invoked his rights under the Colorado statute. The parties were unable to agree on the fair value of the Defendant's shares, and the Plaintiff commenced this action pursuant to C.R.S. § 7-113-301 to have the Court determine that value.

At the conclusion of a five-day bench trial, the Court determined that two issues required resolution: (i) the "effective date" of the corporate action, as defined in C.R.S. § 7-113-104(1); and (ii) the "fair value" of the Plaintiff corporation as of that date. The Court found that the "effective date" of the merger was March 19, 2004, the date upon which various merger documents were accepted and filed by the California Secretary of State. The Court found that although neither party's expert had formally opined as to the fair value of the company as of that date, the Plaintiff's expert, Madeline Mamaux, had articulated the more credible overall valuation methodology. Ms. Mamaux had opined that the fair value of the Plaintiff corporation on March 31, 2004 was $3,658,702, and the Court accepted this valuation as also being accurate as of March 19, 2004, 12 days earlier. From this figure, the Court deducted certain booked debts that had not been considered by Ms. Mamaux, reducing the corporation's fair value to $2,335,585. Dividing that value by the Defendant's one-third interest in the corporation, the Court concluded that the fair value of the Defendant's shares was $778,528.33.

C.R.S. § 7-113-301(1) requires the Court to also determine "accrued interest" on the sum owed to the dissenting shareholder. C.R.S. § 7-113-101(5) defines the term "interest" to be "at the average rate currently paid by the corporation on its principal bank loans or, if none, at the legal rate specified in [C.R.S. § 5-12-101]." That same statutory section directs that interest run from the "effective date of the corporate action until the date of payment." The Court directed

the parties to file simultaneous briefs stating their positions as to the appropriate interest rate to be applied and the date from which prejudgment interest should be calculated.

The Defendant's brief **(# 176)** contends that the record does not reflect the interest rate on any of the Plaintiff corporation's principal bank loans, and that, as a result, the Court should apply the statutory 8% interest rate set forth in C.R.S. § 5-12-101. The Plaintiff's brief **(# 177)** cites to a legal encyclopedia and several cases from other states for the proposition that the appropriate interest rate is "that which a prudent investor would have invested the funds." The Plaintiff goes on to argue that rates between 3% and 5.25 % are appropriate, and argues that C.R.S. § 5-12-102, Colorado's statutory post-judgment interest provision, supports such a conclusion.

Separately, the Plaintiff moves for reconsideration **(# 179)** of the Court's findings and conclusions as to the merits of the case, arguing: (i) that the Court misinterpreted the statutory term "effective date of the corporate action" in deciding that the operative date was the filing of merger papers with the California Secretary of State, rather than the date of the corporate vote approving the merger; and (ii) that the Court should not have adopted Ms. Mamaux's on-the-stand calculation of a corporate value as of March 31, 2004, and instead, should have adopted her formal valuation of the company as of January 31, 2004, as the January valuation was based on more reliable financial records.

The Court turns first to the Plaintiff's Motion for Reconsideration. Although the Federal Rules of Civil Procedure do not expressly contemplate a "motion for reconsideration," Rules 59(e), 60(b), and the Court's inherent authority all permit the Court, in appropriate circumstances, to revisit and revise its rulings if necessary, prior to the entry of final judgment *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005). The timeliness of the motion determines whether it is

analyzed under Rule 59(e) – if filed within 10 days of the entry of the judgment or order to be reconsidered – or Rule 60(b) – if filed later than 10 days. *Id., citing Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995). Here, the Plaintiff's motion was filed more than 10 days after the Court's findings and conclusions were rendered, and thus, the Court analyzes the motion under Fed. R. Civ. P. 60(b).

Rule 60(b) permits the Court to reconsider an order due to, among other things, a substantive "mistake or law or fact" by the Court, Fed. R. Civ. P. 60(b)(1), *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999), "newly discovered evidence that, with reasonable diligence, could not have been discovered [earlier]," Fed. R. Civ. P. 60(b)(2), or as a result of "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Nevertheless, reconsideration under Rule 60(b) is extraordinary, and may only be granted in exceptional circumstances. *Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1153 (10th Cir. 2007). Reconsideration is not a tool to rehash previously-presented arguments already considered and rejected by the Court, nor properly used to present new arguments based upon law or facts that existed at the time of the original argument. *FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir.1998); *Van Skiver v. United States*, 952 F.2d 1241, 1243-44 (10th Cir.1991).

Here, the Court observes that both arguments raised by the Plaintiff's motion for reconsideration are based on facts and law that existed at the time the parties made their closing statements. As to the issue of determining the "effective date of the corporate action," as early as the third day of trial, the Plaintiff's counsel was acknowledging that "The legal dispute is what

4

was the effective date of the merger or the effective date of the corporate action."[1] That same day, the Court engaged in extended colloquy with the Plaintiff's counsel concerning certain evidence regarding a delivery of merger documents to the California Secretary of State in January 2004. In that exchange, the Court asked the Plaintiff's counsel whether "the critical issue" in this case was "the date the merger occurred," to which the Plaintiff's counsel responded that "As to the effective date of the corporate action, which is the statute's language." In that same exchange, the Court stated "Well, what I understand – and please correct me if I misunderstand – Plaintiff's counsel to say is they believe the date was in January, correct? . . . So they believe it's in January and [the Defendant] believes it's in March."

Moreover, the Plaintiff's closing argument extensively addressed the legal and factual issues involving the statutory phrase "effective date of the corporate action." there, the Plaintiff's counsel explained:

> I looked at that throughout the statute, effective date of the corporate action. I've read all of the sections where they use effective date of the corporate action. They don't use the effective date of the merger, which is in the language of the agreement and plan of merger, which says the effective date of the merger shall be the date on which a copy of this agreement and the accompanying officers' certificates are filed with the California secretary of state, but I am the not going to make much of that, but I'm troubled when I searched and searched for any case and went through all the statutes and I couldn't find a single case where there was a conflict over the effective date of the corporate action. There was no authority that identified the effective date of the corporate action.
>
> [. . .]
>
> Is it January 15, 2004? Is it March 19, 2004? Those seem to be

---

[1] The quoted text is derived from the Court's unedited, real-time transcript of the proceedings. The parties have not supplied the Court with a formal transcription.

> the two dates. One could argue that the effective date of the corporate action could be earlier; but I think the effective date of the corporate action is when the corporation has done -- at the earliest it would be the date at which the corporation had done everything it needed to do to cause the action to occur.
>
> [. . .]
>
> I do not have a strong answer here other than my belief that the statute I believe contemplated some reasonable determinative date. . . . Under Colorado law, the effective date of the corporate action, I'm unclear of whether or not it was at the date that the corporation took all action it needed to take with regard to that matter and the effective date was January 15, or not.

Thus, it is abundantly clear that the Plaintiff's motion for reconsideration merely raises arguments that could have been – and in some respects, were – raised at the time of trial. As stated above, a motion for reconsideration is not an appropriate means to re-raise these arguments, or present alternative arguments that the Plaintiff could have raised at that time. For this reason alone, the Plaintiff's motion could be denied.

The Court also notes from the preceding quotation that the Plaintiff's argument in its motion for reconsideration – that "effective date of the corporate action" means the date of the corporate vote approving of the merger in 2003 – is inconsistent with the Plaintiff's representation in closing argument that it believed the effective date was the date it attempted to file the merger papers in January 2004. Having taken the position at trial that the effective date was "the date at which the corporation had done everything it needed to do to cause the action to occur," the Court could deem the Plaintiff to have waived the argument it now raises in its motion for reconsideration.

In any event, the Plaintiff's argument fails on the merits as well. A textual analysis of the

6

Dissenter's Rights statute reveals that the "effective date of the corporate action" is, in these circumstances, the date upon which the merger itself took effect. The term "effective date of the corporate action" is not expressly defined in the Dissenter's Rights statute; it appears only in the definition of "fair value," in that the value is determined "immediately before the effective date of the corporate action to which the dissenter objects." C.R.S. § 7-113-101(4). The statute then defines "the following corporate actions" that would trigger a dissenter's rights. C.R.S. § 7-113-102(1). Logically, the "corporate action" referred to in the definition of "fair value" must be the same "corporate action" that triggers a dissenter's rights. Section 102 of the statute lists five types of corporate actions that create dissenter's rights – *e.g.* certain types of mergers, share exchanges, sale of the corporation's property, etc. In each instance, the corporate action is defined as the "consummation" of the particular act – that is, "consummation of a plan of merger." C.R.S. § 7-113-102(1)(a). The term "consummation" is not defined in the statute, but the common dictionary definition of that word is "the action of completing [or] finishing" something. *Oxford English Dictionary*, 2d Ed. (1989). In other words, a "plan of merger" is "consummated" when the "plan" is completed and the merger is accomplished. This would suggest that the "effective date of the corporate action" is indeed the date upon which the merger took effect.

This conclusion is reinforced by the language used in other portions of the statute. C.R.S. § 7-113-203 explains the process by which a dissenting shareholder gives notice to the corporation that her or she intends to invoke dissenter's rights. That statute states "If a proposed corporate action creating dissenters' rights . . . is authorized," the dissenter must give certain written notice to the corporation. Among the things the dissenter must include in that notice is a

"state[ment] that the corporate action was authorized and state[ment of] the effective date or proposed effective date of the corporate action." C.R.S. § 7-113-203(2)(a). This subsection reveals that the Plaintiff's construction of "effective date of the corporate action" to mean the date on which the corporation votes to approve the action cannot be correct. If the "effective date" is the date on which the corporate action is approved, there can never be a situation in which a dissenter could state both the date of approval and the "<u>proposed</u> effective date of the corporate action," as those dates would necessarily be the same. The language used in the statute can only be sensibly read if the "effective date of the corporate action" means the actual completion of the proposal approved by the corporation – *i.e.* upon the completion of the merger approved by the corporate vote. *See also* C.R.S. § 7-113-207 (contemplating that the "effective date of the corporate action" could occur more than 60 days after the date set by the corporation for filing of dissenters' claims, and C.R.S. § 7-113-203 states that the corporation does not set the date for filing claims until after the "proposed corporate action" is "authorized").

Because the text of the statute clearly and unambiguously reveals that the phrase "effective date of the corporate action" refers to the date upon which the change in corporate form or sale of stock or property is completed, the Court need not proceed to address the secondary external authority cited by the Plaintiff. It is sufficient to note that the Court finds such authority unpersuasive in interpreting the text of Colorado's statute.[2] Accordingly, the Plaintiff's Motion for Reconsideration as it relates to the issue of the appropriate "effective date" is denied.

The Court also denies the Plaintiff's motion as it relates to the sufficiency of Ms.

---

[2]The Court summarily rejects the Plaintiff's factual arguments as to when the merger was completed, for the reasons stated in its findings of fact and conclusions of law at trial.

Mamaux's valuation of the corporation as of March 31, 2004. On its face, this portion of the Plaintiff's motion appears to be contingent on the Court accepting the Plaintiff's argument as to the appropriate effective date. The Plaintiff's argument under the heading "Valuation" states that "therefore" the appropriate valuation was either a November 2003 preliminary appraisal by Ms. Mamaux, or a January 31, 2004 formal appraisal. The Plaintiff's use of the term "therefore" in the introductory sentence of this argument suggests that its valuation challenge is contingent upon it successfully showing that the effective date of the corporate action was sometime closer to either the November 2003 or January 2004 date. Because the Court has found the Plaintiff's legal argument on the effective date to be without merit, it need not reach this contingent argument.

The Plaintiff makes what appears to be an abbreviated argument that the March 2004 valuation was insufficient in the final two paragraphs of the body of its 23-page motion. This argument is difficult to parse: each paragraph consists of a single run-on sentence, and the verb tenses and apparent subject of each sentence shift abruptly and repeatedly. As best the Court can determine, the Plaintiff complains that Ms. Mamaux's off-the-cuff March 2004 valuation, calculated on the witness stand at the request of the Court, is unreliable because Ms. Mamaux did not independently investigate the reliability of the financial records on which it is based, and because it was substantially greater than her valuation of the company as of January 2004, only two months earlier.

Again, these are factual arguments that could have been presented by the Plaintiff at trial, and for that reason alone, the Court could denies the motion for reconsideration as it relates to valuation. In any event, the Court also finds the Plaintiff's arguments to be without merit. Ms. Mamaux was the Plaintiff's tendered expert, and the Court found that her off-the-cuff valuation of

9

the company as of March 2004 was rendered in accordance with the same methodology that the Plaintiff had urged the Court to adopt in accepting Ms. Mamaux's January 2004 valuation. The difference between the two valuations is readily explained by the evidence that the corporation experienced a significant increase in sales in the first quarter of 2004. The Plaintiff's argument that Ms. Mamaux relied on inaccurate corporate financial records is simply a matter bearing on her credibility, and was (or at least could have been) adequately explored on cross- and redirect examination. Accordingly, the Plaintiff's motion for reconsideration is denied in its entirety.

Turning then to the question of interest, the Court rejects the Plaintiff's implicit suggestion that it deviate from C.R.S. § 7-113-101(5)'s statutory definition of the interest rate to be applied. Once again, the Plaintiff's reliance on secondary sources from other jurisdictions is unpersuasive when the Colorado legislature has clearly addressed how prejudgment[3] interest is to be awarded. The Court agrees with the Defendant that, because the record does not reflect the interest rate on any principal bank loans incurred by the Plaintiff corporation, the Court must apply the statutory rate of C.R.S. § 5-12-101. Thus, the Court awards prejudgment interest on the sum of $778,528.33 at a rate of 8%, compounded annually. Pursuant to C.R.S. § 7-113-101(5), that interest runs from the "effective date of the corporate action," namely, March 19, 2004. Accordingly, the Court awards prejudgment interest in the amount of $280,650.86, for a total award to the Defendant of $1,059,179.20.

C.R.S. § 7-113-301(5) directs the Court to enter judgment in favor of the Defendant for the fair value of his shares, plus interest, less any amount paid by the corporation. There is no

---

[3]For the same reason, the Court rejects the Plaintiff's reliance on C.R.S. § 5-12-102, which is a statute expressly relating to post-judgment interest.

evidence in the record that the Court made any payment to the Defendant for his shares, and thus, contemporaneously with this Order, the Court will enter judgment in favor of the Defendant in the amount of $1,059,179.20.  For the reasons set forth above, the Plaintiff's Motion for Reconsideration **(# 179)** is **DENIED**.

Dated this 26th day of March, 2008

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge