IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-1566-MSK-CBS

CALIFORNIA DHI, INC.,

    Plaintiff,

v.

UDO ERASMUS,

    Defendant.
_____

**OPINION AND ORDER DENYING, IN PART, MOTION FOR
RECONSIDERATION AND DENYING MOTION FOR ATTORNEY'S FEES**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Attorney's Fees **(# 188)**, the Plaintiff's response **(# 214)**, and the Defendant's reply **(# 217)**; and the Defendant's Motion for Reconsideration **(# 189)**, the Plaintiff's response **(# 211)**, and the Defendant's reply **(# 218)**.

## BACKGROUND

The Court made extensive factual findings on the record at the close of the bench trial on February 15, 2008 **(# 173)** and summarized those facts in its March 26, 2008 Opinion and Order Denying Motion for Reconsideration **(# 183)**. To the extent necessary, those recitations are deemed incorporated herein, and the Court will not repeat them. It is sufficient for purposes of this Order to note that this action was brought under Colorado law to determine the fair value of the defendant's shares in the Plaintiff corporation as of the effective date of a corporate merger to which he dissented. C.R.S § 7-113-101 *et seq.* After a bench trial, the Court accepted the

1

methodology and revised valuation of the Plaintiff's expert, Madeline Mamaux, and determined the value of the Defendant's shares on the effective date to be $778,528.33, exclusive of interest.

After the Court rendered its oral findings of fact and conclusions of law, but prior to entry of final judgment including interest calculations, the Plaintiff moved for reconsideration of the Court's findings and conclusions, arguing that the Court erred in determining the effective date of the corporate action and, consequently, erred in accepting Ms. Mamaux's valuation as of the date chosen by the Court. In an Order **(# 183)** dated March 26, 2008, the Court denied the Plaintiff's motion, finding, among other things, that the Plaintiff's motion improperly sought to re-litigate issues that were or could have been fully presented and resolved at the time of trial. *See FDIC v. United Pacific Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir.1998); *Van Skiver v. United States*, 952 F.2d 1241, 1243-44 (10th Cir.1991). Contemporaneously with that Order, the Court entered judgment **(# 184)** in favor of the Defendant in the amount of $1,059,179.20, inclusive of interest.

On April 9, 2008, the Defendant timely filed the instant Motion to Alter Judgment **(#189)** pursuant to Fed. R. Civ. P. 59(e), arguing: (i) the caption of the judgment should be modified to reflect the fact that the Plaintiff has been incorrectly named throughout the duration of this litigation[1]; (ii) that Ms. Mamaux erred in calculations involving the costs of replacing part-time

---

[1]Putting aside the Court's utter surprise that the parties should discover and seek to correct the error in the caption only after engaging in four years of vigorous litigation, the Plaintiff's response to the Motion To Amend Judgment essentially concedes that the modification requested by the Defendant "should have and would have been accomplished by stipulation." In light of this concession, the Court is baffled as to why the parties did not immediately enter into such a stipulation and as to why the Defendant felt the need to continue to argue the issue in a reply brief. It is a simple matter to deem the judgment amended to reflect the correct corporate name of the Plaintiff, and in this respect, the Motion To Amend Judgment is granted.

management with a full-time manager, thereby understating the corporation's value; and (iii) the Court erred in making adjustments to the corporation's value to reflect debts owed to its shareholders and the Defendant, effectively subordinating the corporation's debt to the Defendant to debts owed to other shareholders.

Separately, the Defendant moved **(# 188)** for an award of attorney's fees pursuant to C.R.S. § 7-113-302(2)(a) and (b), arguing that the Plaintiff failed to substantially comply with its obligations under the dissenter's rights statute and that it "acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by" statute. Specifically, he argues that the Plaintiff's bad faith is shown by the Plaintiff: (i) prior to the litigation, giving notice of an incorrect effective date of the corporate transaction and, during the litigation, failing to disclose evidence that would establish the correct effective date; (ii) asserting and then abandoning an argument that the corporate value should be reduced by certain debts owed to its founder that were unfounded when inserted into the corporation's books in 2001 and 2002; and (iii) prior to litigation, tendered a check to the Defendant for its valuation of the Defendant's shares knowing that the corporation lacked sufficient funds in its bank account to honor the check.

## ANALYSIS

### A. Motion for Reconsideration

Grounds for relief under Fed. R. Civ. P. 59(e) include an intervening change in the controlling law, newly-discovered evidence, or the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 9$10^{th}$ Cir. 2000). However, it is not an appropriate vehicle to revisit issues that were or could have been presented in earlier proceedings. *Id.* Here, the arguments raised by the Defendant relate to matters which were, or

3

could have been, fully addressed at the time of trial. On this basis alone, the Defendant's Motion for Reconsideration is denied.

Even if the Court were to consider the Defendant's arguments on their substantive merits, it would still deny the motion. With regard to the Defendant's contention that the Court erred in accepting Ms. Mamaux's adjustment of value to reflect the increased costs of a full-time manager instead of a part-time one, this issue was squarely addressed by the Plaintiff during its closing argument. *Docket* # 208 at p. 687 ("And she says . . . we shouldn't have part-time management. . . I'm going to take [compensation to the part-time management] out [of the valuation and replace it with estimated costs of a full-time manager] . . . because they really should have a full-time person there"). The Court has carefully scrutinized the Defendant's closing argument to ascertain where the Defendant apprised the Court of his belief that Ms. Mamaux's calculations on this point were incorrect or unjustified, but finds nothing in the Defendant's argument that addresses the issue, directly or indirectly. Having failed to raise the issue at trial, the Court deems the Defendant to have abandoned any argument challenging Ms. Mamaux's opinion in this respect, and a post-judgment motion raising the issue for the first time is simply Monday-morning quarterbacking coming many days too late.[2]

---

[2] Moreover, the trial transcript reveals that the Defendant's argument that Ms. Mamaux understated the salaries paid to Bernard Collett, the part-time manager, was premised upon Exhibit 1020, a document that was never received into evidence. *Docket* # 205 at p. 291-93. An unadmitted document might be sufficient to allow the Defendant to attack the credibility of Ms. Mamaux's calculations of Mr. Collett's salary (and thus of the increased costs that a full-time manager would pose), but without admitting Exhibit 1020, or offering some other substantive evidence of Mr. Collett's actual salary, the Defendant failed to come forward with facts upon which the Court could modify Ms. Mamaux's calculations to be more correct. As between the possibly incorrect salary calculations, testified to by Ms. Mamaux, and the "correct" salary calculations, for which no competent evidence in the record exists, the Court did not err in accepting Ms. Mamaux's calculations.

4

The argument that the Court improperly "subordinated" the corporation's debt to the Defendant to that of other corporate shareholders is also without merit. Reduced to its essence, the Defendant's argument is that the Court should not have reduced its calculation of the corporation's value by approximately $766,000 recorded on the corporation's books as corporate debts payable to shareholder Robert Collett. The Defendant points out that such debts were recorded as being "subordinate to all [corporate] creditors," and further argues that, once he exercised his dissenter's rights, he effectively became a corporate creditor instead of a shareholder. Thus, he argues, reducing the corporate value by the debts owed to Robert Collett effectively – and improperly – subordinated the corporation's debt to the Defendant as a creditor to the debts it owed to Robert Collett.

The Defendant's argument that his financial interest in the corporation changed from equity holder to general creditor at the moment he exercised his dissenter's rights appears to arise from the Defendant's misreading of C.R.S. § 7-113-204(2). That statute states: "A shareholder [who invokes dissenter's rights] retains all the rights of a shareholder, except the right to transfer the shares, until the effective date of the proposed corporate action . . . and has only the right to receive payment for the shares after the effective date of such corporate action." Nothing in this language is susceptible to an interpretation that a dissenter's role shifts from shareholder to general creditor of the corporation as of the effective date of the corporate action. Rather, the statutory language clearly juxtaposes the dissenter retaining "all the rights of a shareholder" up until the effective date, and retaining only the shareholder's right to "payment for [his] shares" after that date. Put differently, the status of the dissenter as a shareholder never changes, but the bundle of rights he enjoys as a shareholder is eventually whittled away to a

5

single one – to cash out his share of the corporation – once the challenged corporate action occurs.[3]

The Court need not delve into an extensive refutation of the logic of the Defendant's argument. It is clear from the language and design of the dissenter's rights statute that the dissenter forces what is essentially a constructive dissolution of the corporation. In such circumstances, shareholders, including the dissenting shareholder, receive their proportionate equity from the corporation only after all corporate debts are satisfied. To suggest that, upon invoking dissenter's rights, a shareholder can leap from equity holder to general creditor would be to entitle the dissenter to a priority status above other shareholders. It would allow the dissenting shareholder to escape the effect of the accumulated debts of the corporation on the value of his/her shares (and saddle the remaining shareholders with a disproportionate burden of existing corporate debt), and simultaneously grant a windfall to a dissenter who chooses to abandon an insolvent or undercapitalized company. This is clearly not the social policy that the dissenter's rights statute was intended to encourage. By contrast, reading the statute to ensure that the dissenter receives his share of the corporate value after all corporate debts are accounted

---

[3]The cases cited by the Defendant for the proposition that the shareholder's status changes to that of a creditor are plainly inapposite. Both cases involve calculating the appropriate statute of limitations to be applied to the claims therein. *Martinez v. Archuleta-Padie*, 143 P.3d 1112, 1114 (Colo. App. 2006) (buyer's claim for seller's failure to transfer title to real property sounded in quiet title, not breach of sales contract, because purchase divested seller of interest in the property and replaced it with only an interest in receiving payment); *Board of Trustees of Policemen's Pension Fund v. Koman*, 298 P.2d 737, 741 (Colo. 1956) (employee's claim for pension barred by statute of limitations when he failed to give notice of his claim that he was entitled to a disability pension). The Defendant appears to have cited the cases simply because they appear to acknowledge some sort of distinction between a person having a thing and a person having "the right to receive payment for" the thing, although the rationale and significace of that distinction is never elaborated upon in either case.

for avoids creating perverse incentives and ensures that a dissenter receives precisely that which his shares entitle him to: a portion of whatever excess equity exists in the corporation. Accordingly, the Defendant's argument on this point is without merit.[4]

For these reasons, the Defendant's Motion to Amend Judgment is granted only with regard to modifying the caption of this case, and denied in all other respects.

**B. Attorney's fees**

The Defendant seeks an award of fees pursuant to C.R.S. § 7-113-302(2). That statute provides: "The court may also assess the fees and expenses of counsel and experts for the respective parties, in amounts the court finds equitable, . . . (a) in favor of the dissenters if the court finds the corporation did not substantially comply with [the notice and payment procedures]; or (b) . . . if the court finds that the party against whom the fees and expenses are assessed acted arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article." Neither statute nor caselaw specifically identifies who bears the burden of proof on these issues, but logically the party claiming entitlement to fees – here, the Defendant – should bear the burden of proving that entitlement.

The Court first considers whether the Defendant has shown that the Plaintiff did not "substantially comply" with the notice and payment procedures set forth by C.R.S. § 7-113-201 - 209. Neither side points to authority, and the Court's own research has revealed none, in which

---

[4]The Defendant's motion is not precisely focused and appears to flirt with other arguments as well. For example, there appears to be some underdeveloped suggestion that the debt owed to Robert Collett was improperly recorded or was suspiciously out of line with other corporate obligations. The Court declines to attempt to construct some argument for the Defendant out of fragments of ideas whirling about his motion, and thus, does not venture beyond those arguments that are fully developed.

7

the phrase "substantially comply" in C.R.S. § 7-113-302(2)(a) is interpreted. The Court notes that the relevant process requires the corporation and dissenting shareholder to engage in a series of written notices and demands, and offers and counter-offers. The Defendant's motion does not specifically contend that the Plaintiff failed to give any of the required notices, nor challenge the Plaintiff's compliance with each of the deadlines set by the statute. In fact, the Defendant's argument on this issue is not well-developed or well-presented,[5] and he does not identify a specific statutory procedure with which the Plaintiff allegedly did not comply. The Court generously construes the Defendant's argument on this point to raise two issues: (i) that the Plaintiff failed to tender a meaningful payment offer for the Defendant's shares because bank records show that the check that was tendered to (but never cashed by) the Defendant for payment of his shares was not secured by sufficient funds; and (ii) a generalized assertion that the Plaintiff's own estimate of the value of the Defendant's shares was not reasonable or in good faith.

As to the first point, the Court finds that the Defendant offers nothing but a conclusory assertion that the tendered check was not secured by sufficient funds. The entirety of his proof on this issue in his motion consists of the single assertion that "In discovery in this action, [the Defendant] learned for the first time that there were never sufficient funds in plaintiff's bank account on which the check was drawn to pay the check." No evidence – not even an affidavit

---

[5]For example, he argues that various actions by the Plaintiff – including actions in which the Plaintiff "deceiv[ed] the Court" as to the effective date of the corporate action and certain items of corporate debt – indicate a lack of substantial compliance. (Emphasis added.) Obviously, acts committed by the Plaintiff during this litigation are irrelevant to the question of whether the Plaintiff complied with the portions of the statute that establish the procedure to be followed by the corporation and dissenting shareholder prior to litigation.

from the Defendant to this effect – is offered to support this assertion.⁶ In the absence of any evidentiary support, the Court finds that the Defendant has failed to carry his burden of proof that the tendered check was not secured by sufficient funds, and thus, this allegation fails to demonstrate that the Plaintiff did not substantially comply with the dissenter's rights procedure.

As to the second point, assuming, without actually finding, that a corporation failure to make a reasonable, good faith tender offer would reflect a failure to "substantially comply" with C.R.S. § 7-113-206 for purposes of awarding fees under C.R.S. § 7-113-302(2)(a), the Court finds that Defendant has failed to show that the Plaintiff's valuation and tender offer in the Spring of 2004 was unreasonable or made in bad faith. Although the Plaintiff's valuation of the Defendant's shares at approximately $ 370,000 was significantly lower than the approximately $778,000 value found by the Court, the difference is not, of itself, proof that the Plaintiff's offer was somehow unreasonable or made in bad faith.⁷ The mere fact that a corporation's valuation of a dissenter's shares differs from that ultimately found at trial cannot necessarily show that the corporation failed to substantially comply with C.R.S. § 7-113-206 in making the offer; otherwise, the attorney's fee provision in the statute would simply direct that fees be

---

⁶It is conceivable that evidence on this point was adduced during trial some 10 months ago. However, in the absence of citations by the Defendant to supporting evidence, be they exhibits to the Defendant's motion or transcripts of trial, the Court declines to embark upon its own expedition through the extensive record of this case to find evidence to support the Defendant's arguments. Among other things, doing so requires the Court to abdicate its role as a neutral and to become a partisan in favor of one party. *See generally Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 672 (10th Cir. 1998).

⁷If the Court looked solely at the disparity in amounts claimed versus amounts received, it would be forced to conclude that, to the extent the Plaintiff was unreasonable in offering approximately 50% of the actual value of the Defendant's shares, the Defendant's demand for roughly $ 2.5 million, a sum more than 300% of the value found by the Court, was thus even <u>more</u> unreasonable.

automatically awarded to a successful dissenter. Absent proof by the Defendant that the Plaintiff's $ 370,000 offer was utterly arbitrary or not supported by the corporation's explanation of its valuation, as required by C.R.S. § 7-113-206(2)(b), the Court finds that the Defendant has not carried his burden of showing that the Plaintiff failed to "substantially comply" with the statutory procedure, and thus, the Defendant is not entitled to an award of fees under § 7-113-302(a).

The Court then turns to § 7-113-302(b). That statute permits the Court to award attorney's fees against <u>any</u> party that has acted "arbitrarily, vexatiously, or not in good faith with respect to the rights provided by this article." In *Santa's Workshop v. A.B. Hirschfeld Press, Inc.*, 851 P.2d 264, 266-67 (Colo. App. 1993), the court considered a trial court's award of fees against a shareholder who had initially demanded a grossly inflated value for its shares. The appeals court upheld the finding that the shareholder had acted in bad faith, noting: (i) the shareholder did not attempt to relate its demand to any recognizable method of stock valuation at any point in the proceedings; (ii) other dissenting shareholders had made more reasonable valuation demands; (iii) unlike the case relied upon by the shareholder, the corporation had timely complied with its procedural obligations; (iv) the corporation had made all of its books and records available to the shareholder, but the shareholder had declined to review them; and (v) the shareholder had failed to respond to any settlement proposals prior to trial. *Id.* The court emphasized that "significant leeway should be granted in assessing whether a [party's] conduct is arbitrary and vexatious," but found that the fact recited above warranted the trial court's finding of bad faith. *Id.* at 267.

In support of his contention that the Plaintiff's conduct here was vexatious and not in good faith, the Defendant cites to three particular facts: (i) it tendered a check in payment for his shares that was not secured by sufficient funds; (ii) it deceived the Defendant during discovery and the Court during trial about the true effective date of the corporate action; and (iii) it claimed that its value should be reduced by approximately $ 540,000 in what the Defendant calls "sham" debts booked as being owed to other shareholders for deferred compensation in 2001 and 2002.

As to the first point, the Court's observation *supra* that the Defendant has failed to come forward with evidence that would show that the tendered check was drawn on insufficient funds is sufficient to reject the contention that this act reflects the Plaintiff's bad faith or vexatious conduct.

As to the second point, the Court declines to find any "deceit" by the Plaintiff as to the effective date of the corporate action. The Plaintiff's notice of dissenter's rights informed the Defendant that the Plaintiff believed the corporate action was effective on January 14, 2004, the date that merger papers were submitted to (but later rejected by) the California Secretary of State. Ultimately, the Court determined that this was incorrect, and the merger became effective on March 19, 2004, the day the merger papers were finally accepted for filing by the California Secretary of State. But the mere fact that the Plaintiff advocated for a finding of a different effective date is not enough to conclude that its position in this litigation was vexatious or in bad faith. It is not enough for the Defendant to show that the effective date or valuation amount he urged was more persuasive than the Plaintiffs; the statute requires him to show that the corporation's position was presented in bad faith, for vexatious purposes, or was utterly arbitrary. Although it was ultimately unpersuasive, the Plaintiff's position – that the merger was

effective once the Plaintiff sent the paperwork to California Secretary of State, even though additional material was later requested by the state – is not so bereft of a plausible factual or legal argument that it could be said to have been interposed in bad faith or for vexatious purposes.[8]

Finally, the Defendant argues that the Plaintiff initially asserted, but later abandoned, a contention that $ 540,000 in deferred compensation to other shareholders should be deducted from the corporation's value. The Court declines to find such conduct as being vexatious or in bad faith. Indeed, the Court notes that, throughout this litigation, both sides have asserted a variety of contentions that were eventually abandoned prior to trial. For example, the Defendant's own Amended Answer **(# 98)** contains a variety of "counterclaims," including several allegations of corporate waste, all of which the Defendant apparently abandoned prior to trial. The Defendant's portion of the Amended Proposed Pretrial Order recited a number of additional assertions that were not presented at trial. The Court observes that both sides had a great deal of difficulty confining their pleadings and pretrial filings to the relatively narrow issues in this case, and both sides raised a variety of claims and took a variety of positions throughout this litigation that were ultimately not presented at trial. Given the unusual breadth and vigor of the litigation posture of both sides in this case, the Court declines to find that the Plaintiff's abandonment of one particular argument prior to trial represents vexatious or bad faith conduct sufficient to warrant an award of fees.

---

[8]The Court declines to adopt the Defendant's argument that the Plaintiff failed to disclose documentation from the California Secretary of State establishing the formal filing date of the merger documents. The Defendant's argument on this point consists of conclusory assertions without citation to evidence supporting his contentions on this issue. *Docket* # 188 at 3.

Accordingly, because the Court finds that the Defendant has not established the factual predicate necessary for an award of attorney's fees under C.R.S. § 7-113-302(2)(b), the Court refuses to award attorney's fees to either party.[9]

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Attorney's Fees **(# 188)** is **DENIED**. The Defendant's Motion for Reconsideration **(# 189)** is **GRANTED IN PART**,

---

[9]Even if the Court were able to find arbitrary, vexatious, or bad faith conduct on the part of the Plaintiff, it would only award the Defendant fees "in amounts the court finds equitable." C.R.S. § 7-113-302(2). The Court would find that the instant litigation was simply another front in an extensive, lengthy, heated, and ultimately unproductive legal war between the parties. The parties' positions in this case often reflected neither a well-reasoned legal argument nor a genuine attempt to calculate the fair value of the Defendant's shares for purposes of invoking dissenter's rights, but instead dogged opposition to whatever position or argument the other side raised. *See e.g. Docket* # 3 (Defendant's motion to dismiss claim seeking to value his shares "for lack of personal jurisdiction"); *Docket* # 120 (Defendant's Motion To Strike Contentions and Exhibits" from Proposed Pretrial Order and to "Deem Certain Facts Established"); *Docket* # 128 (Defendant insisting that any pre-trial payment by Plaintiff of partial funds to him should also prohibit any potential that the Defendant would be required to refund it if otherwise appropriate). Given the parties' overpleading, lack of focus on the simple issues presented here, overly-aggressive litigation tactics, and various other behaviors that needlessly burdened the judicial system in this case, the Court would exercise its equitable discretion to deny all parties the luxury of engaging in such litigation at their adversary's expense. Being required to conduct such battles on their own dime is the only means by which the Court can deter the parties from repetitive litigation and encourage them to economically resolve what is, at bottom, an economic dispute.

insofar as the caption of this case is **DEEMED AMENDED**, *nunc pro tunc* to the commencement of this case, to correct the name of the Plaintiff to be "Designing Health, Inc.," and **DENIED IN PART**, in all other respects.

Dated this 16th day of December, 2008

**BY THE COURT:**

Marcia S. Krieger
United States District Judge